**IN THE COURT OF APPEALS OF IOWA**

No. 17-1438
Filed November 8, 2017

**IN THE INTEREST OF K.W.,**
**Minor Child,**

**H.H., Mother,**
　　Appellant,

**B.W., Father.**
　　Appellant.

_____

　　Appeal from the Iowa District Court for Warren County, Kevin A. Parker, District Associate Judge.

　　A mother and father separately appeal from an order terminating their parental rights.　**AFFIRMED ON BOTH APPEALS.**

　　Kimberly A. Graham, Indianola, for appellant mother.

　　Bryan P. Webber of Carr & Wright, P.L.C., Des Moines, for appellant father.

　　Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

　　Yvonne C. Naanep of Yvonne C. Naanep Attorney at Law, Des Moines, guardian ad litem for minor child.

　　Considered by Danilson, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

A mother and father separately appeal from an order terminating their parental rights to their minor child, K.W., born in 2016.  Both parents contend the State failed to prove by clear and convincing evidence the statutory grounds for termination and termination is not in the best interests of the child.

## I.  Background

The parents and child came to the attention of the Iowa Department of Human Services (DHS) in September 2016 as a result of a pending child-in-need-of-assistance (CINA) matter concerning another child of the parents.  The father has previous involvement with DHS, including two founded physical abuse reports and three terminations of parental rights.  The father has been convicted of child endangerment on two separate occasions.  Both convictions involved physical abuse of two of his other children.  Two days after K.W.'s birth, the mother consented to removal of K.W., and the child was placed in foster care.  In consenting to removal, the mother conceded "[c]ontinued placement of [K.W.] in the home would be contrary to [her] welfare due to [the] mother's inability to keep [K.W.] safe."  A temporary-removal order was entered the following day.

The State filed a CINA petition shortly after removal, stating K.W.'s sibling was adjudicated CINA "due to the mother's inability to keep her away from" the father and the mother's "continued contact with [the father] knowing his history puts [K.W.] at risk for abuse."  In November, the juvenile court ordered removal to continue and adjudicated K.W. CINA, concluding the mother's continued contact with the father put the child at risk for abuse.  Following a dispositional hearing in December, the juvenile court concluded placement outside of the home was still

necessary because the mother "has not demonstrated she is able to identify safety concerns," "[s]he is unable to process information in order to make safe and reasonable decisions that would keep [K.W.] safe," and, "[d]espite over a year of services provided in K.W.'s sibling's case, the same safety concerns remain." The court also granted the State's motion to waive reasonable efforts with regard to the father, noting he was provided services in relation to his other children, "but services were not used and termination occurred" and "[f]urther services would not assist in reuniting the child with [her] father." The State subsequently petitioned for the termination of both parents' parental rights. Following a hearing, the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(d), (h), and (i) (2017) and the father's pursuant to Iowa Code section 232.116(1)(g) and (i). As noted, both parents appeal.

## II.     Standard of Review

We review termination-of-parental-rights (TPR) proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III.    Analysis

Both parents contend the State failed to prove by clear and convincing evidence the statutory grounds for termination. "On appeal, we may affirm the

juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

A.    Grounds for Termination—Mother

The mother's parental rights were terminated pursuant to Iowa Code section 232.116(1)(d), (h), and (i).   Her argument that termination on these grounds was unsupported by clear and convincing evidence is limited to the following:

> Mother disagrees with the Court's findings of fact . . . and the Court's conclusions of law . . . .
> Mother denied at the TPR hearing and has at all times since January 2016 denied she is in a relationship with [the father]. Further, Mother asserted in testimony she maintained a clean enough apartment to have her children in her care.  She testified she actively sought and engaged in therapy to mitigate her depression and her therapist reported same.  Further, Mother sought treatment for her sleep apnea, which caused her to miss visits and appointments, and received a cpap machine to help her sleeping, right around the time of the termination hearing. Evidence of same, through medical equipment receipts and medical records, was admitted into the record.

Under section 232.116(1)(h), the court may terminate parental rights if it finds the State has proved by clear and convincing evidence the child (1) is three years of age or younger, (2) has been adjudicated CINA, (3) has been removed from the physical custody of the parent for at least six of the last twelve months, or the last six consecutive months and any trial period at home has been less than thirty days, and (4) cannot be returned to the parent's custody at the time of the termination hearing.  We interpret the mother's vague argument as a challenge to the establishment of the fourth element, that the child could not be returned to her at the time of the termination hearing.

At the termination hearing, the mother testified her relationship with the father was "[n]ot existent." According to her brief, this has been the case since January 2016. The father, however, testified that as recently as February 2017, a month before the termination hearing, he was staying at the mother's house on the weekends, despite DHS's advisement to the mother that she needed to stay away from him if she wanted to regain custody. DHS has also documented regular contact between the parents on social media ranging from January to August 2016. In one post in August, the father identified the mother as his "girlfriend." Medical records also indicated the father accompanied the mother to a pre-birth appointment in August. In September, the mother's automobile was observed parked at the father's residence. The mother's neighbors have also reported to DHS that the father resides with her and "he parks his vehicle away from the building so it is not seen there." These reports of cohabitation continued through as late as February 2017, one month before the termination hearing. The father's probation officer has also advised DHS that the father reported he was staying with the mother.

Based on the foregoing, it is quite clear that the parents are still in a relationship. The father's history of physical abuse toward his children despite being offered services in prior CINA and TPR cases, together with the mother's apparent inability to extricate the father from her life in order to provide a safe environment for K.W., weighed heavily against returning the child to the mother's care at the time of the termination hearing. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting a parent's past conduct is instructive in determining the parent's future behavior); *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (stating

that when considering what the future holds if a child is returned to the parent, we must look to the parent's past behavior because it may be indicative of the quality of care the parent is capable of providing in the future). We also highlight DHS's concern and the district court's implicit conclusion that the mother is generally unable to care for the child, which the mother does not contest on appeal. This is further evidence that the child could not be returned to the mother's care at the time of the termination hearing. We agree with the juvenile court the evidence is clear and convincing the child could not be returned to the mother's care at the time of the termination hearing and affirm the termination of the mother's parental rights under Iowa Code section 232.116(1)(h).

B.     Grounds for Termination—Father

The father's parental rights were terminated pursuant to Iowa Code section 232.116(1)(g) and (i). Under section 232.116(1)(g), the court may terminate parental rights if it finds the State has proved by clear and convincing evidence: (1) the child has been adjudicated CINA, (2) the "court has terminated parental rights . . . with respect to another child who is a member of the same family," (3) "the parent continues to lack the ability or willingness to respond to services which would correct the situation," and (4) "an additional period of rehabilitation would not correct the situation."

The father challenges the State's establishment of the third and fourth elements. He notes he "testified at the time of trial that he had gained insight through some of the programming and services he had undergone through this matter as well as his criminal matters" and "he was willing and able to engage in any services that would be recommended for him."

We are not persuaded by the father's self-serving testimony. This is the father's fourth journey through CINA and TPR proceedings, all of which have resulted in termination. In the prior three cases, he has received "psychological evaluations, parenting classes, FSRP services, [and] anger management and therapy." According to DHS, none of these services "have seemed to change" him and "additional services would not help [him] become an appropriate caregiver." Also, in the current matter, a social worker with DHS "attempted to meet with [the father] in November [2016] to go over service recommendations, and he failed to follow through with setting up that appointment" and, when the social worker attempted to contact him later that month, the father "failed to respond to that contact attempt."

Based on the father's historic and contemporary inability to benefit from or take advantage of services, we agree with the juvenile court that the evidence is clear and convincing the father continues to lack the ability or willingness to respond to services which would correct the situation and an additional period of rehabilitation would not correct the situation. *See* Iowa Code § 232.116(1)(g)(3)–(4). We therefore affirm the termination of the father's parental rights under Iowa Code section 232.116(1)(g).

C.     Best Interests of the Child

Both parties contend termination is not in the best interests of the child. The parents' arguments on this issue are largely identical to their arguments on the issue of statutory grounds for termination. Only time can tell if the parents will someday be able to overcome the circumstances warranting termination in this case. "It is well-settled law that we cannot deprive a child of permanency

after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.B.*, 815 N.W.2d at 777 (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). "[A]t some point, the rights and needs of the child[] rise above the rights and needs of the parent[s]." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). "The legislature has categorically determined 'the needs of a child are promoted by termination of parental rights' if the grounds for termination of parental rights exist." *In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa Ct. App. 1992) (quoting *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990)).

Based on the circumstances of this case, the parents' past performance, and the lack of convincing evidence that the parents can change in a reasonable period of time in order to protect the child, further her long-term nurturing and growth, and meet her physical, mental and emotional needs, we agree with the district court that termination is in her best interests. *See* Iowa Code § 232.116(2). Neither parent argues an exception to termination contained in Iowa Code section 232.116(3) applies, so we need not consider that issue in this appeal. *See P.L.*, 778 N.W.2d at 40.

**AFFIRMED ON BOTH APPEALS.**